**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Finepoint Innovations, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> A.T. Cross Company, <br><br> Defendant. | No. CV 04-1318-PHX-SMM <br><br> **MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendant A.T. Cross Company's ("Cross") Motion for Judgment on the Pleadings (the "Motion") and Motion to Strike and Exclude Exhibit 1 to Plaintiff Finepoint Innovations, Inc.'s ("Finepoint") response to the Motion. (Dkts. 52, 64.) After considering the parties' briefs, the Court will grant both the Motion for Judgment on the Pleadings and the Motion to Strike.

## BACKGROUND

This action arises out of the alleged breach of a Pen License and Supply Agreement (the "Agreement") entered into by Finepoint and Cross on September 25, 2000. (Dkt. 38, ¶7.) The Agreement granted Cross an exclusive license to use certain patented technology and other proprietary rights held by Finepoint in the manufacturing, importing, selling, and repairing of certain electronic pens and related components. (Id.) In exchange for this license, Cross agreed to pay express and implied royalties or license fees to Finepoint under various compensation models. (Id., ¶8.) Under one compensation model, Cross would sell products to certain customers of Finepoint, in exchange for half the profits. (Id., ¶10.)

1   In its Second Amended Complaint (the "SAC"), Finepoint alleges claims of (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing; (iii) intentional interference with business expectancy, (iv) fraud, (v) declaratory judgment, (vi) fraud on the patent office, and (vii) negligent misrepresentation in patent application. (Id., ¶¶26-81.)

Finepoint alleges that Cross breached its contractual duties, *inter alia*, by: (i) not properly compensating Finepoint; (ii) failing to manufacture and provide products free from defects; (iii) delivering goods that "failed to function in accordance with the required specifications"; and (iv) violating its warranty to supply products free from defects in material and workmanship. (Id., ¶¶13-15, 26-30.)

In support of its claim for intentional interference with business expectancy, Finepoint alleges that Cross caused defective products to be delivered to LG Electronics, Inc. ("LGE"), the contract manufacturer and subcontractor for Hewlett-Packard Development Company ("HP"), at a time when LGE and HP were Finepoint's customers. (Id., ¶15.) Finepoint further alleges that it had orally agreed to the basic terms of a long-term supply agreement with HP when Cross caused defective products to be delivered to LGE. According to Finepoint, the manufacture and delivery of defective products by Cross to LGE caused HP to terminate its negotiations with Finepoint and transfer its business instead to a competitor. (Id., ¶¶16-18.)

Cross requests that this Court enter judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to Count Three, intentional interference with business expectancy, and Count Four, fraud, asserting that these claims are barred by Arizona's economic loss rule. (Dkt. 52 at 1.) Finepoint concedes that, "as presently pleaded," its fraud claim is subject to dismissal under the economic loss rule and stipulates to dismissal of Count 4 without prejudice. (Dkt. 58 at 1.) Finepoint disputes that its intentional interference claim is barred.

## STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings,

- 2 -

matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c). A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001); Fajardo v. County of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).

## DISCUSSION

### A.     Motion to Strike

In support of its response to Cross's Motion, Finepoint attached its answers to Cross's First Set of Non-Uniform Interrogatiories. (Dkt. 58, Ex. 1.) Cross contends the interrogatory answers should be excluded from consideration because "extrinsic material is not appropriate" when deciding a motion for judgment on the pleadings. (Dkt. 64 at 2.) Although parties are permitted to submit extrinsic material in support of or in opposition to a motion for judgment on the pleadings, the Court agrees with Cross that the interrogatory answers and other extrinsic evidence submitted in the present case should be excluded.

In the Ninth Circuit, a motion for judgment on the pleadings "is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court." North Star Int'l v. Arizona Corporation Comm'n, 720 F.2d 578, 582 (9th Cir. 1983) (holding that district court properly treated motion as motion to dismiss, despite presence of affidavits, where there was no indication of the court's reliance on outside materials and the court expressly stated that it was dismissing for failure to state a claim upon which relief could be granted). Rather, "a district court must take some affirmative action to effectuate conversion." Swedberg v. Marotzke, 339 F.3d 1139, 1142 (9th Cir. 2003).

In granting Cross's Motion for Judgment on the Pleadings with respect to Counts III, and in justifying its legal conclusion that Count III is barred by Arizona's economic loss rule,

- 3 -

1 (infra at 4-5), the Court has not relied on the extraneous information submitted and referred to by either Finepoint or Cross. Rather, all extraneous documents outside the pleadings have been excluded from the Court's determination of whether Count III is barred by Arizona's economic loss rule. North Star Int'l, 720 F.2d at 582.

### B.     Count III is Barred By Arizona's Economic Loss Rule

Cross argues that Finepoint's intentional interference with business expectancy claim is barred by Arizona's economic loss rule. (Dkt. 52 at 3-4.) Finepoint argues that the economic loss rule does not bar this tort claim because it "does not 'arise' from any contract duty owed by Cross" to Finepoint. (Dkt. 58 at 3.) The Court disagrees.

The "economic loss rule" formulated by the Arizona courts "bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage." Carstens v. City of Phoenix, 75 P.3d 1081, 1083 (Ariz. Ct. App. 2003). This rule is based on the premise that "contract law and tort law each protect distinct interests. Generally, contract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain . . . . Tort law, in contrast, seeks to protect the public from harm to person or property." Id. Thus, the economic loss rule "clarifies that economic losses cannot be recovered under a tort theory." Carstens, 75 P.3d at 1084 (quotation and citation omitted).

In the present case, no amendment can save Finepoint's intentional interference with business expectancy claim, because it is a tort claim alleging only economic damages resulting from an alleged breach of contract. See Fillmore v. Maricopa Water Processing Systems, Inc., 120 P.3d 697, 704 (Ariz. 2005) (intentional interference with business expectancy is a tort claim). As previously stated, the SAC alleges that Cross interfered with Finepoint's business relationship with HP by manufacturing and delivering defective products to LGE, the contract manufacturer and subcontractor for HP, at a time when Finepoint was negotiation the terms of a long-term supply agreement with HP. (Dkt. 38, ¶¶13-18, 36-44.) Based on Cross's delivery of defective products to LGE, Finepoint alleges,

- 4 -

1  HP terminated its negotiations with Finepoint, which resulted in damages in "an amount to
2  be proven at trial." (Id., ¶¶16-18, 43.) This purely economic harm resulting from actions that
3  allegedly breached the parties' Agreement falls squarely under the economic loss rule.
4  Because Finepoint's intentional interference with business expectancy claim does not grow
5  out of circumstances independent of its contractual relationship with Cross, it is barred by
6  Arizona's economic loss rule. See QC Const. Prods., LLC v. Cohill's Bldg. Specialties, Inc.,
7  423 F.Supp.2d 1008, 1015 (D. Ariz. 2006) (dismissing interference with business
8  relationship claim under economic loss rule).

9        Finepoint further argues that the economic loss rule does not bar its claim for
10 intentional interference with business expectancy because "[n]o Arizona court appears to
11 have addressed the issue." (Dkt. 58 at 2.)  The Court is not persuaded.

12       A federal court sitting in diversity must assess how a state's highest court would
13 resolve the state law issue. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir.
14 2001). The court must "look to existing state law without predicting potential changes in that
15 law." Id.  The Ninth Circuit Court of Appeals has previously held that the Arizona Supreme
16 Court "reads the 'economic loss' rule broadly." Apollo Group, Inc. v. Avnet, Inc., 58 F.3d
17 477, 480 (9th Cir. 1995). In the present case, Finepoint seeks to recover consequential losses
18 resulting from Cross's alleged breaches of the Agreement.  (Dkt. 38 at p.11, ¶A.)  The
19 foreseeable risk that Cross could breach the duty to supply products free from defects in
20 material and workmanship (see Dkt. 38, ¶13-15), could have been – and indeed, according
21 to Finepoint, was – allocated by the parties in their contractual Agreement.  Thus, it is clear
22 that the Arizona Supreme Court would apply the economic loss rule to this situation.
23 Moreover, if Cross's alleged breach of contract could also constitute tortious interference,
24 "plaintiffs everywhere could obtain tort remedies for even traditional contract-based claims."
25 Aspect Systems, Inc. v. Lam Research Corp., 2006 WL 2683642, *6 (D. Ariz. 2006).  No
26 Arizona cases support such an outcome.
27 / / /
28

1 **C.   <u>Count IV Will Be Dismissed Without Prejudice</u>**

2 Finepoint concedes that its fraud claim, as presently pleaded, is barred by Arizona's
3 economic loss rule, and requests dismissal without prejudice. (Dkt. 58 at 1.)  Because the
4 Court cannot say with certainty that Finepoint's fraud claim did not grow out of
5 circumstances independent of its contractual relationship with Cross, the Court will dismiss
6 Count IV without prejudice. <u>See</u> <u>Schreiber Dist. Co. v. ServWell Furniture Co.</u>, 806 F.2d
7 1393, 1401 (9th Cir. 1986) ("leave to amend should be granted unless the court determines
8 that the allegation of other facts consistent with the challenged pleading could not possibly
9 cure the deficiency") (citations omitted).

10 Accordingly,

11 **IT IS HEREBY ORDERED GRANTING** Defendant A.T. Cross Company's
12 Motion for Judgment on the Pleadings as to Count III, intentional interference with business
13 expectancy, and Count IV, fraud.  (Dkt. 52.)

14 **IT IS FURTHER ORDERED** that Count III of the Second Amended Complaint is
15 dismissed with prejudice.

16 **IT IS FURTHER ORDERED** that Count IV of the Second Amended Complaint is
17 dismissed without prejudice.

18 **IT IS FURTHER ORDERED GRANTING** Defendant A.T. Cross Company's
19 Motion to Strike and Exclude Exhibit 1 to Plaintiff Finepoint Innovations, Inc.'s Response.
20 (Dkt. 64.)

21 DATED this 13th day of November, 2006.

_____
Stephen M. McNamee
United States District Judge

- 6 -